UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ELLSWORTH S. KRANTZ, III,**

    **Plaintiff,**

v.                                                               **CASE NO. 8:06-CV-1488-T-EAJ**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**
_____/

**<u>FINAL ORDER</u>**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (Dkt. 6).

Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards.  See 42 U.S.C. § 405(g) (2003).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed an application for DIB on April 23, 1998, claiming an onset of disability beginning January 8, 1996. (T 70-72)  Plaintiff claims disability due to balance problems, tinnitus, hearing loss, dizziness, and  unsteadiness, injuries he allegedly sustained in a work accident involving a blow to the head in January 1996. (T 97)  Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision dated October 26, 1999. (T 17-30)  The Appeals Council declined to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 4-8)  Thereafter, Plaintiff filed an action for judicial review with this court which resulted in a remand order dated September 18, 2003, directing that the Commissioner call a Vocational Expert ("VE") to determine whether Plaintiff could perform other jobs in the national

economy other than his prior work. (T 282-92 )[3] A second administrative hearing was held on March 1, 2005. The ALJ thereafter rendered a new decision on April 21, 2006 denying Plaintiff's claim for DIB. (T 258-81)[4] This action for judicial review followed. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Plaintiff, forty-eight years old on the alleged onset date, has a high school education and previous work experience as a sound engineer, stage technician, electrician, and projectionist. (T 42) Finding that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision, the ALJ stated that Plaintiff, through his last insured date of March 31, 2002, has the following severe impairments: status post head injury with chronic neck pain, tinnitus, sensorineural hearing loss, and vertigo. (T 260-61). However, Plaintiff's impairments or combination of impairments did not meet or medically equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (T 271)

Based on the evidence, the ALJ assessed Plaintiff's residual functional capacity ("RFC") as of March 31, 2002 to perform a limited range of medium work. Specifically, the ALJ placed the following restrictions on Plaintiff:

> The claimant is able to lift/carry up to 50 pounds occasionally and 25 pounds frequently. His ability to sit, stand, and walk was unrestricted. He retained the ability to perform repetitive hand actions, operate foot controls, and frequently bend, squat, stop, crouch, and crawl. He could not climb ladders, ropes, or scaffolds. He should have avoided exposure to hazardous machinery, unprotected heights, and

---

[3] The court found it unnecessary to address Plaintiff's other arguments but noted that ". . . in order to avoid future problems, the ALJ would be well advised to more throughly address on remand Dr. Filskov's report with respect to Plaintiff's 'long-standing, pre-existing personality disorder with narcissistic, schizotypal, and antisocial characteristics.'" (T 291 at n. 1)

[4] All references to the ALJ or the ALJ's decision in this order refer to the April 21, 2006 decision.

>concentrated exposure to loud noise, vibration, and hazardous machinery, unprotected heights, and concentrated exposure to loud noise, vibration, and hazards.

(T 272) Further, the ALJ stated that Plaintiff's testimony as to pain and other restrictions prohibiting all substantial, gainful activity was not credible. (T 273)

Relying on the testimony of a VE in response to hypothetical questions which incorporated these limitations, the ALJ determined that Plaintiff could perform his former work as a projectionist, (T 279) as well as other jobs in the national economy such as grocery bagger, sandwich maker, toll collector, and parking lot cashier. (T 281) Therefore, the application for disability benefits was denied. This appeal followed.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff alleges the Commissioner erred by: (1) finding Plaintiff's mental impairment non-severe; (2) failing to give proper weight to Plaintiff's treating and examining physicians; (3) failing to properly consider the combined effect of all impairments and subjective complaints; and (4) failing to propound a complete hypothetical question to the VE.

**A.** Plaintiff states that the ALJ should have found that he had a severe mental impairment based on the evidence (Dkt. 30 at 12). According to Plaintiff, the reports of Plaintiff's consultative examiners as well as that of Plaintiff's treating neurologist, Kenneth Kahn, M.D. ("Dr. Kahn"), establish that Plaintiff suffers from personality disorder, anxiety, depression, and psychosomatic personality disorder. These impairments have more than a minimal effect on Plaintiff's daily activities and ability to work, Plaintiff submits (Id. at 13).

At step two of the five-step evaluation process of social security claims, the ALJ determines whether a claimant has a "severe impairment" within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii). This step "acts as a filter" and the finding of any severe impairment or any combination of impairments that together qualify as severe at this step allows the ALJ to continue the disability analysis. Jamison v. Bowen, 814 F.2d at 588.

The regulations provide:

You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. . . .

20 C.F.R. § 416.920(c).

A severe impairment is interpreted as "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). The severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

While finding that Plaintiff's severe impairments included "status post head injury", the ALJ stated that Plaintiff's January 1996 head injury which resulted nine staples being placed in his scalp had not produced any lasting mental problems. (T 261) Specifically, the ALJ noted that prior to March 31, 2002, Plaintiff "had no severe memory or cognitive impairment." (Id.) The ALJ also found that on or before March 31, 2002, Plaintiff had no severe impairment "due to personality disorder, depression, adjustment disorder, post-traumatic stress disorder (PTSD), or generalized anxiety." (T 268)

Among the medical records reviewed by the ALJ were those of Dr. Kahn, Thomas Newman, M.D. ("Dr. Newman"), Lionel Cavallini, M.D. "Dr. Cavallini"), and consultative examiners Susan Filskov, Ph.D. ("Dr. Filskov"), Steven Wu, Ph.D. ("Dr. Wu"), and Peter Bursten, Ph.D. ("Dr. Burnsten"). (T 261-71)  The ALJ rejected Dr. Kahn's assessment that Plaintiff had suffered a skull fracture with resulting post-traumatic seizure disorder and memory loss as inconsistent with Dr. Newman's evaluation as well as other medical evidence including x-rays, EEG, and a brain MRI scan.  (T 261-62, 264-65)  Dr. Kahn opined that due to Plaintiff's memory loss, unsteadiness, and syncopal episodes, Plaintiff was permanently and totally disabled. (T 203, 265)  In discounting Dr. Kahn's assessment, the ALJ noted that Dr. Kahn did not administer memory tests to Plaintiff and did not diagnose an impairment of Plaintiff's cognitive functioning. (T 265)  The ALJ's rejection of Dr. Kahn's opinions is not in error; the ALJ pointed to discrepancies within Dr. Kahn's opinions and contradicting reports of other treating sources.  See Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations omitted) (the ALJ may reject any medical opinion if the evidence supports a contrary finding).

The ALJ also assigned little weight to the mental assessment form completed by Dr. Cavallini, Dr. Kahn's colleague who took over his patients after Dr. Kahn left their medical group. (T 265-66)  Dr. Cavallini assessed that Plaintiff had a marked limitation in his ability to understand and remember short instructions and a marked limitation in his ability to complete a normal workday without interruptions from psychologically-based symptoms. (T 265)  However, the ALJ noted that Dr. Cavallini was not Plaintiff's treating neurologist; he evaluated Plaintiff on one occasion and reviewed Dr. Kahn's records in order to complete the mental assessment forms. (T 241-47)  Further, Dr. Cavallini provided no supporting documentation for his opinions and did not respond to the ALJ's request for additional evidence. (T 266)  The ALJ's consideration of Dr. Cavallini's opinion

is appropriate, as that physician is not Plaintiff's treating physician. McNamee v. Soc. Sec. Admin., 164 Fed. App'x 919, 923 (11th Cir. 2006).

In analyzing Plaintiff's mental impairments, the ALJ extensively discussed Dr. Filskov's consultative neuropsychological evaluation on October 24, 1996. The ALJ noted her findings that Plaintiff's test scores showed no significant cognitive or memory deficit. (T 263) Although the ALJ discounted Dr. Filskov's opinion that Plaintiff had a mixed personality disorder that would pose difficulties in Plaintiff's general functioning, the ALJ gave great weight to Dr. Filskov's assessment that Plaintiff "has no psychological or neuropsychological sequelae from his January 8, 1996 accident" and to her opinion that Plaintiff could return to work.[5] (T 264)

The ALJ also placed great weight on the assessment of consultative examiner Steven Wu, Ph.D. ("Dr. Wu"), who examined Plaintiff's medical records and consultatively examined him in July 2004. (T 266-68) In his assessment of Plaintiff's mental capabilities, Dr. Wu noted Plaintiff's relatively high memory test scores and concluded that there was no limitation of Plaintiff's ability to make simple work-related decisions. (T 329-30) In fact, Dr. Wu opined that Plaintiff's complaints of memory loss were purely subjective, not objective. (T 329) Dr. Wu assigned Plaintiff a Global Assessment Functioning ("GAF") score of 80. (T 330) This score is indicative of transient symptoms of mental limitations that result in no more than slight impairment to social, occupational, or school functioning. See AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 1994). (T 268)

Additionally, the ALJ determined that Plaintiff's daily activities are inconsistent with a finding of a severe mental impairment. Plaintiff testified that he maintained a wide range of daily

---

[5] The ALJ emphasized that neither Dr. Wu nor Dr. Burstein found that Plaintiff suffered from a preexisting personality disorder. (T 268)

activities, including taking walks with his wife, occasionally caring for his elderly father, mowing the lawn once a month, and cleaning his small home. (T 50, 52, 53)  As further evidence of Plaintiff's intact memory, the ALJ points out that Plaintiff telephoned Dr. Filskov eight months after his consultative evaluation with her and informed her of the exact route he drove eight months earlier, including street names, from her office back to his house. (T 178, 264)  Additionally, after Dr. Kahn reported Plaintiff's alleged seizures with associated blackouts to the Florida Department of Motor Vehicles, Plaintiff stated that he did not understand why the DMV was restricting his driver's license because Dr. Newman had told him that he could return to work.  (T 270)

The ALJ properly exercised his discretion in weighing the evidence and resolving inconsistencies among the various medical opinions in the record.  After reviewing the evidence of record, the ALJ properly concluded that Plaintiff's mental impairments result in no more than mild difficulties in the activities of daily living; substantial evidence supports the ALJ's conclusion.

**B**.  Plaintiff contends that the ALJ did not accord proper weight to the opinions of Dr. Kahn and Dr. Cavallini.[6] Plaintiff further submits that the ALJ did not properly consider the opinions of Plaintiff's consultative examiners, Dr. Filskov, Dr. Wu, and C. Nnadi, M.D. ("Dr. Nnadi").

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).  The opinions of non-examining, reviewing physicians standing alone do not constitute substantial evidence, and are entitled to little

---

[6] To that extent this argument repeats some of the arguments made in section A., supra, regarding Plaintiff's mental limitations, the prior analysis controls.

8

weight when contrary to those of the examining physicians. Sharfarz, 825 F.2d at 280 (citation omitted).

The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (ALJ may discount a treating physician's opinion when that opinion is unsupported by the medical evidence and contradicts the physician's own treatment notes). Further, the weight afforded a physician's conclusory statements regarding a claimant depends upon the extent to which the statements are supported by clinical or laboratory findings and are consistent with other evidence of record. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings. Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir. 1985).

Dr. Kahn was Plaintiff's treating neurologist from July 1996 to approximately September 1998. In his last month of treating Plaintiff, Dr. Kahn opined that Plaintiff was "permanently and totally disabled from working", and he indicated his intent to inform the Florida Department of Motor Vehicles that Plaintiff was an unsafe driver due to "blackout" spells behind the wheel. (T 203) Despite this, the ALJ's rejection of Dr. Kahn's opinion was based on good cause. As stated above, the ALJ determined that Dr. Kahn's opinion was inconsistent with Dr. Newman's evaluation performed immediately after the January 1996 accident. (T 261) Dr. Newman interpreted Plaintiff's brain MRI scan and EEG as normal and determined that there was no evidence of permanent neurological disorder. (T 149) Moreover, Dr. Kahn did not administer memory tests to Plaintiff and, after he reviewed Dr. Filskov's report, stated only that undocumented memory loss is common with post-concussion syndrome. (T 187) He did not comment on Plaintiff's objectively high test scores.

The ALJ also emphasized that Plaintiff was able to cull from memory without difficulty the names of his various doctors and the dates he saw them, the dates of his three marriages, and his girlfriend's address and phone number. (T 266)  Thus, the ALJ appropriately discounted Dr. Kahn's opinions.

As for Dr. Cavallini, the ALJ determined that he was not Plaintiff's treating neurologist, a conclusion substantiated by the record.  The ALJ held that Dr. Cavallini's mental RFC assessment was entitled to little weight because it was presented with no supporting documentation of his examination of Plaintiff or of any psychological testing performed during the office visit. (T 266)  Dr. Cavallini saw Plaintiff on one occasion for the purpose of completing a mental RFC form. (T 426-27)  The opinions of a one-time examiner do not require the same type of deference as a treating physician.  McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).  Although Dr. Cavallini presumably had the benefit of Dr. Kahn's medical records at the time, he offered no support of his opinion and did not respond to requests for more information. (T 241-47)  Contrary to Plaintiff's assertion, Dr. Wu's findings do not support those of Dr. Cavallini.  Although Dr. Wu's August 2, 2004 medical source statement indicated that Plaintiff had a marked limitation in his ability to respond appropriately to work pressures, he concluded that Plaintiff had no apparent limitation in occupation functioning. (T 268)

Plaintiff also maintains that the ALJ, despite his extensive discussion of Dr. Filskov's report, selectively weighed portions of her findings to reach the conclusion that Plaintiff does not suffer from a disability.  However, as discussed above, the ALJ adequately considered Dr. Filskov's statement that Plaintiff had a mixed personality disorder that would impact his ability to function.  Dr. Filskov ultimately determined that Plaintiff could return to his past work. (T 185)

Finally, the ALJ's decision to assign little weight to Dr. Nnadi's opinion is not in error.  Dr. Nnadi was a consultative examiner, not a treating physician.  Dr. Nnadi examined Plaintiff in 2004

and determined that Plaintiff "may not be able to return to his present work" but that retraining "may be beneficial." (T 314) Importantly, the ALJ discounted Dr. Nadi's opinion to the extent it reflected Plaintiff's impairments as a result of Plaintiff's April 2002 car accident because Plaintiff's date last insured for disability purposes was March 31, 2004. (T 278) The ALJ also noted that Plaintiff's range of motion testing was generally normal and that Plaintiff, despite high frequency hearing loss, could hear Dr. Nnadi speak in a normal level voice. (Id.) Thus, even if the ALJ's decision to give little weight to Dr. Nnadi's opinion were in error, which it is not, the physician's findings are not inconsistent with the ALJ's disability determination.

The ALJ appropriately weighed the opinions of Plaintiff's treating physicians and consultative examiners; substantial evidence in the record supports the ALJ's decision.

**C.** Plaintiff submits that the ALJ did not properly evaluate the combined effect of his impairments (Dkt. 30 at 17). In particular, Plaintiff cites his complaints of tinnitus, vertigo, imbalance, inability to concentrate or focus, and neck and shoulder pain. (Dkt. 30 at 18) Plaintiff also states that the ALJ erred in not considering Plaintiff's mental impairments and misinterpreted the extent of Plaintiff's daily activities (Id. at 20).

The ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition, the ALJ must explain whether the impairments are severe singularly and in combination. Id. The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe". Hudson v. Heckler, 755 F.2d at 785-86, fn.2. The failure to comply with these requirements results in a remand. Gibson, 779 F.2d at 623.

The ALJ stated that Plaintiff suffered from the severe impairments of status post head injury

11

with chronic neck pain, tinnitus, sensorineural hearing loss, and vertigo, but that Plaintiff *"did not have an impairment or combination of impairments* that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (T 261, 271) The Commissioner correctly points out that this language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. Wheeler v. Heckler, 784 F.2d at 1076. After reviewing the evidence, the ALJ properly considered, alone and in combination, Plaintiff's impairments which he determined caused work-related limitations. Accordingly, Plaintiff's argument that the ALJ failed to consider his impairments in combination is without merit. [7]

Therefore, this issue does not entitle Plaintiff to relief.

**D.** Plaintiff also contends that the ALJ erred by posing incomplete hypothetical questions to the VE (Dkt. 30 at 15). Specifically, Plaintiff contends that the hypothetical question posed by the ALJ did not include any limitations with regard to Plaintiff's personality disorder such as his ability to stay on task, concentrate, and maintain a normal work schedule, and his ability to deal with work-related stress, depression, and anxiety due to tinnitus (Id. at 16).

Once a claimant has met his initial burden of showing that he cannot do past work, the testimony of a VE is generally required to determine whether the claimant's RFC permits him to perform other work. Chester v. Bowen, 792 F.2d 129, 131-32 (11th Cir. 1986) (citation omitted). The Commissioner may use this vocational testimony to show that there are other jobs in the national economy which plaintiff can perform. Id. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's

---

[7] As the Commissioner points out, as for Plaintiff's argument that the ALJ did not consider his tinnitus, vertigo, or neck pain, the ALJ specifically found that these impairments were severe impairments. (T 261)

impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing McSwain v. Bowen, 814 F.2d at 619-20). The ALJ is only required to include those restrictions he recognizes in the hypothetical question to the VE. See Bowling v. Shalala, 36 F.3d 431, 435-36 (5th Cir. 1994).

In this case, the ALJ relied on the testimony of a VE, Teresa Manning, to establish that Plaintiff could perform his past relevant work as a projectionist and other jobs in the national economy. (T 448-60) The ALJ asked the VE the following hypothetical question:

> "I'd like you to consider that we're dealing with an individual who's between the ages of 47 and 53. Who has a high school education and past work experience similar to that which the clamant has had in this case. All right, if a person with that background could occasionally lift and carry 50 pounds. Could frequently lift and carry 25 pounds. Could sit, stand, and walk without restriction. Was capable of performing repetitive hand actions. Was capable of operating foot controls. Could frequently bend, squat, stoop, crouch, and crawl. Would be unable to climb ladders, ropes, or scaffolds. Would have to avoid exposure to hazardous machinery or unprotected heights. With those limitations could that individual perform any of the past work that the claimant has done?"

(T 449) The VE responded in the affirmative and testified that such an individual could perform Plaintiff's past relevant work as a projectionist and could also perform work as a janitor, grocery bagger, and sandwich maker. (Id.)

The ALJ then asked the VE to consider a second hypothetical:

> "Taking that same first hypothetical and further assuming that the individual could only frequently climb ramps and stairs and balance, kneel. With those additional limitations would that have any impact on that person's ability to do work as a projectionist or perform any of those three jobs you identified? . . . If the individual also had to avoid concentrated exposure to noise, vibration would that change your opinion?"

(Id.) The VE responded that the additional restrictions would not impact the jobs previously identified. (Id.) The VE also testified that an inability to drive would not impact the Plaintiff's ability to perform the jobs identified. (T 451)

The ALJ posed a third hypothetical:

13

> "Okay. If the individual could only frequently handle, finger, feel, reach, push, and pull with both upper extremities would that preclude the work as a projectionist or any of those three jobs?"

(T 451) The VE testified that it would not. (Id.)

The ALJ's hypothetical to the VE encompassed the limitations which the ALJ recognized. See Bowling, 36 F.3d at 435-36. The ALJ properly disregarded Plaintiff's mental impairments, for the reasons discussed above. Therefore Plaintiff has not shown any error in the VE testimony upon which the ALJ relied in determining that there were jobs in the national economy which Plaintiff could perform.

### III.

Plaintiff had the burden of establishing disability between the alleged onset of disability and the date of last insured. Given the record before the ALJ, the ALJ's decision is supported by substantial evidence and the proper legal principles. To hold otherwise would be to reweigh the evidence, a task not permitted on judicial review as long as there is substantial evidence to support the administrative decision. Goodley, 608 F.2d at 236. The decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits payments is therefore affirmed.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) the decision of the Commissioner is **AFFIRMED** and the case is **DISMISSED**, with each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**DONE AND ORDERED** in Tampa, Florida on this 28th day of September, 2007.

_____
ELIZABETH A JENKINS
United States Magistrate Judge